IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 SEP -8  AM 9: 12

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

CAROLYN WATSON, Special
Administratrix of the Estate of
Michael Simon,

      Plaintiff,

v.                                                     No. 04-2400 B

ANDREA HERENTON and
RODNEY HERENTON,

      Defendants.

---

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

---

Before the Court is the motion of the Defendants, Andrea Herenton and Rodney Herenton,

to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(7) of the Federal Rules of Civil

Procedure.  In this wrongful death action based on diversity jurisdiction, the Plaintiff, Carolyn

Watson, Special Administratrix of the Estate of Michael Simon and the mother of Mr. Simon, seeks

damages arising from the death of her son in an auto accident also involving Defendant Andrea

Herenton.  In the instant motion, the Defendants argue that (1) diversity does not exist because

Simon and the Defendants are Tennessee residents and (2) the Plaintiff has failed to join an

indispensable party--three other individuals who were struck by Simon's car when he crossed the

median after the initial impact with Herenton.  These persons, Marshell, Marietta and Tracy Corum

(collectively referred to herein as "the Corum Plaintiffs"), have filed lawsuits in state court against

both Andrea Herenton and Simon's estate.  The Court will address the Defendants' assertions

seriatim.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on ___9-8-05___

36

Rule 12(b)(1) permits dismissal of a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). "When the defendant challenges subject matter jurisdiction, the plaintiff has the burden of proving jurisdiction and the court may resolve factual disputes." Robinson v. Ohio, Dep't of Dev., 69 F.App'x 204, 205 (6th Cir. 2003) (citing Rogers v. Stratton Indus., Inc., 798 F.2d 913, 915 (6th Cir. 1986)).

Diversity jurisdiction is permitted under 28 U.S.C. § 1332(a)(1), which provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy . . . is between citizens of different states." "It is well settled that as a matter of statutory construction, diversity of citizenship requires complete diversity between all plaintiffs on one side and all defendants on the other side." Glancy v. Taubman Ctrs., Inc., 373 F.3d 656, 664 (6th Cir. 2004), reh'g en banc denied (Aug. 27, 2004) (citing Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996)). In order to demonstrate the "citizenship" requirement, the Plaintiff must do more than show residence in the district in which the case was filed; rather, she must establish domicile. See Deasy v. Louisville & Jefferson County Metro. Sewer Dist., 47 F.App'x 726, 728 (6th Cir. 2002). "To acquire a domicile within a particular state, a person must be physically present in the state and must have either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere." Id.

The question before the Court, of course, involves the domicile of Mr. Simon, not Ms. Watson, as "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." See 28 U.S.C. § 1332(c)(2). Regretfully, the question is not an easy one. At the time of his death, Simon was 30 years old. According to the record, in 1990 at the age of 18, he left his parents' home at 715 Holiday Drive in West Memphis, Arkansas and moved

2

into the residence of his grandparents, which at that time was located at 501 Burns Street in West Memphis. (Dep. of Carolyn Watson ("Watson Dep.") at 14.)

Ms. Watson stated in her deposition that Simon was married at the time of his death to Daphne Simon, with whom he had a daughter, Brianna Danielle Simon. (Watson Dep. at 8.) Watson was unaware of the marriage until after his demise. She reported that the two married around 1996 and lived together "at a time." (Watson Dep. at 8-9.) There is no indication where the couple married or where they lived at the beginning of the marriage. Watson testified that, when Daphne moved into a house on Tutwiler Avenue in Memphis in 1999, Simon lived there with her for two weeks and then returned to his grandparents' West Memphis home. (Watson Dep. at 8-11.) Thereafter, the decedent continued to see his daughter, but never lived with her or his wife. (Watson Dep. at 11.) To Watson's knowledge, Michael and Daphne never divorced. (Watson Dep. at 61.) An "IDENT-A-KID" card carried by Simon bearing Briana Simon's photograph identified her parents as Daphne and Michael Simon at the Tutwiler address. (Watson Dep. Ex. 3.)

In 2001, Simon moved into a house at 6024 Colony Hill Road in Bartlett, Tennessee with his girlfriend, Hazel Jones, and her five children. (Watson Dep. at 15, 20.) Watson testified that they lived together "off and on" until 2002. During that period, Simon would move back into his grandparents home when he and Jones argued, and would stay there for more than one night. (Watson Dep. at 15.) When Watson visited the Colony Hill Road house after Simon's death, she recovered a tie, a pair of his shoes, pamphlets from his grandfather's funeral and his grandfather's watch. (Watson Dep. at 18.) The latter two items were found in a drawer.

Watson further related that Jones and Simon married in December 2002 and that "he left shortly after that." (Watson Dep. at 19.) When he moved back into his grandparents' home some

3

time around Christmas and New Year's, Watson recalled that he brought numerous items with him, including a washer and dryer, a chest of drawers, his computer, printers, collectible items, his clothes, some of his daughter's things, and a lamp. He did not return to Bartlett. (Watson Dep. at 24.) On March 31, 2003, Jones filed a petition for orders of protection against Simon, whose address was listed on the document as Colony Hill Road. (Watson Dep. Ex. 5.) When shown a copy of the document, it was Watson's recollection that the residence information was incorrect. (Watson Dep. at 20-21.)

In support of diversity jurisdiction, the Plaintiff has proffered the affidavits of herself; Steven Watson, the decedent's half brother; and Marsha Kennedy, secretary to Ms. Watson's attorney. In his affidavit, Steven Watson averred that both he and Simon shared an upstairs loft at their grandparents' home in West Memphis from 1998 until Simon's death. (Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss Ex., Aff. of Steven Watson ("Steven Watson Aff.") at ¶ 1.) He further stated as follows:

> In the latter part of 2001 Michael started dating a woman in Memphis, Tennessee named Hazel Jones. He started spending more and more of his time over there with her. Although he moved a lot of his stuff over there, a lot of his possessions such as clothes and technical books remained at my grandparents. Apparently, Michael and Hazel Jones were always fighting. Michael would come back home and stay for a couple of weeks and then they would patch things up and he would go back and stay [with] Ms. Jones. From the latter part of 2001 until he returned home for good around New Year's of 2003 Michael spent about 40% of his time at home in West Memphis, Arkansas.

> Around New Year's of 2003 Michael came home for good bringing with him a washer, dryer, his computer, his books, clothes and a dresser. I was unaware until then that he had married Ms. Jones. At that time he told me he was home for good.

(Steven Watson Aff. at ¶¶ 2-3.)

Ms. Watson averred in her affidavit that "[u]p until August, 2001, Michael Simon lived in

West Memphis, Arkansas all of his life," and that in "August, 2001 [he] began to stay with his girlfriend, Ms. Hazel Jones and her five children at 6054 Colony Road, Bartlett, Tennessee." (Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss Ex., Aff. of Carolyn Watson ("Carolyn Watson Aff.") at ¶¶ 2, 4.) In addition, she recalled that "[f]rom 1990 to the latter part of 2001 Michael Simon lived with his grandparents. Michael Simon would move out and try something for a month or two and then move back in with his grandparents. He moved back with his grandparents around New Year's Day 2003 and stayed there until his death." (Carolyn Watson Aff. at ¶ 3.) The affidavit of Ms. Kennedy reflected that she checked with the Circuit Court Clerk in Memphis, who confirmed that Simon was never served with a complaint for divorce and petition for orders of protection filed by Jones. (Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss Ex., Aff. of Marsha Kennedy at ¶ 2.)

Also contained in the record is Simon's resume, listing his address as 748 Dogwood Cove in West Memphis, Arkansas. (Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss Ex.) At the time of the accident, Simon was en route to the Memphis International Airport to board a flight to Washington D.C., where he intended to accept a short-term contract assignment from an entity identified as McCormack Fox. The offer letter from McCormack Fox, dated May 22, 2003, was mailed to Colony Hill Road. (Watson Dep. Ex. 4.) Simon had previously worked for companies in Memphis from 1997 to the time of his death, except for the period between November 2001 and May 2002, when he worked in Greenwood, Mississippi. (Watson Dep. Ex. 2.) Simon's 2003 tax forms bear the West Memphis address. (Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss Ex.)

In response to an inquiry by Plaintiff's counsel on August 30, 2004, the Arkansas Department of Finance and Administration, which administers driver's licenses in the State of Arkansas, advised that Simon's address was listed as 501 Burns, West Memphis, Arkansas, the address of his

5

grandparents at the time he first moved into their residence and prior to their move to Dogwood Cove. According to its records, the department last renewed Simon's driver's license in October 2002. (Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss Ex.) The decedent's Arkansas driver's license, a copy of which has been submitted to the Court, was to expire on October 6, 2005. (Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss Ex.)

The Court finds that Watson has made a sufficient showing that Michael Simon's domicile was in Arkansas. Specifically, the evidence suggests that Simon was living in Arkansas at the time of his death and, thus, was "physically present" there, and that there was an absence of intention to make his home elsewhere. See Deasy, 47 F.App'x at 728. In doing so, the Court rejects the mechanical application of the presumption in Tennessee that the domicile of a married man is where his family resides, as posited by the Defendants based on his marriage to Jones. First, the marriage to Jones was not legal if Simon was in fact still married to Daphne Simon. Secondly, it appears to the Court that, while he periodically throughout his adult life left his grandparents' home to engage in other living arrangements, they were never permanent and his "home base" remained in Arkansas. Neither of his "marriages" appeared to necessarily include an intention to cohabitate. Accordingly, the Defendants' motion to dismiss this action on jurisdictional grounds is DENIED.

The Defendants also seek dismissal based on the Plaintiff's failure to join the Corum Plaintiffs in this litigation as they are "indispensable parties." Rule 12(b)(7), Fed. R. Civ. P., permits dismissal of claims for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). "Parties seeking to evade the complete-diversity rule may attempt to maintain federal jurisdiction by failing to name persons or entities that have an interest in the litigation and otherwise should be named. [Rule] 19 addresses this problem by providing guidance for the joinder of persons needed for just

adjudication." Glancy, 373 F.3d at 664. "It establishes guidelines for determining when it is proper to dismiss a case because a person or entity has an interest in the outcome of the litigation that could be impaired in the absence of that person or entity, but joinder of the person or entity will deprive the court of subject matter jurisdiction." Id.

> Rule 19 provides as follows:
>
> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. . . .

Fed. R. Civ. P. 19(a).

> If a person as described in [subsection (a)] cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). "[T]he rule should be employed to promote the full adjudication of disputes with a minimum of litigation effort. In sum, the essence of Rule 19 is to balance the rights of all those whose interests are involved in the action." Glancy, 373 F.3d at 665 (internal citations and quotation marks omitted). That said, courts are cautioned that "Rule 19(a) is more than a rule of convenience and pragmatism; the rule applies only in situations necessitating joinder." Marshall v.

Navistar Int'l Transp. Corp., 168 F.R.D. 606, 609 (E.D. Mich. 1996).  Moreover, while "[i]t is true that the defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility he shares with another[,] [n]onetheless, it takes more than the impending hazard of such a predicament to make a party necessary" under the Rule.  Id. at 610 (internal citations and quotation marks omitted).

In Glancy, the Sixth Circuit recognized that a determination of proper joinder under Rule 19 involves a three-step process:  (1) "the court must determine whether the person or entity is a necessary party under Rule 19(a)"; (2) if so, "the court must then decide if joinder of that person or entity will deprive the court of subject matter jurisdiction"; (3) "if joinder is not feasible because it will eliminate the court's ability to hear the case, the court must analyze the Rule 19(b) factors to determine whether the court should 'in equity and good conscience' dismiss the case because the absentee is indispensable."  Id. at 666.  If the absent party is found not to be a "necessary party" for purposes of subsection (a), no further inquiry is required.  Temple v. Synthes Corp., Ltd., 498 U.S. 5, 8, 111 S.Ct. 315, 316, 112 L.Ed.2d 263 (1990), reh'g denied (Jan. 7, 1991); Centerville ALF, Inc. v. Balanced Care Corp., 197 F.Supp.2d 1039, 1041 (S.D. Ohio 2002).  The movant bears the burden of demonstrating that dismissal under Rule 19 is warranted.  Marshall, 168 F.R.D. at 611.

On May 27, 2004, the Corum Plaintiffs, who are Tennessee residents, filed an action in the Shelby County Circuit Court against the Defendants and Watson for damages arising from injuries sustained in the accident which is the subject of the instant lawsuit.  The following day, Marshell Corum instituted a separate action against the Defendants and Watson in the same court.  The two cases were consolidated on October 25, 2004.  Both state claims, as well as that before this Court, are based in tort.  The Defendants argue that the Corum Plaintiffs are necessary parties herein

because the disposition of the matter without their presence would leave the Defendants subject to a substantial risk of inconsistent verdicts. Thus, they seek an order dismissing the Plaintiff's claim in this Court, allowing her to sue all necessary parties in state court or file a cross-claim in the pending consolidated state court lawsuit.

"As a general rule if the merits of the case may be determined without prejudice to the rights of necessary parties, absent and beyond the jurisdiction of the court, it will be done and the court of equity will strain hard to reach that result." Lacombe v. Manpower, Inc., 109 F.R.D. 350, 352 (D. P.R. 1986) (citations and internal quotation marks omitted). Further, Rule 19 does not alter the well-established rule that it is not necessary for all potential joint tortfeasors to be named in the same lawsuit. Fed. R. Civ. P. 19 advisory committee's note (1966 amendment) ("a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another of like liability"); Temple, 498 U.S. at 7-8, 111 S.Ct. at 316.   As the Sixth Circuit articulated in PaineWebber, Inc. v. Cohen, 276 F.3d 197 (6th Cir. 2001), cert. denied, 537 U.S. 815, 123 S.Ct. 83, 154 L.Ed.2d 19 (2002), "a person's status as a joint tortfeasor does not make that person a necessary party, much less an indispensable party." PaineWebber, Inc., 276 F.3d at 204.  The court rejected an argument similar to that made here, concluding that "the multiple proceedings and inconsistent results in state and federal court that [the movant] seeks to avoid can occur whenever joint tortfeasors are not parties to the same lawsuit. This form of prejudice, however, does not require a finding that joint tortfeasors are necessary or indispensable parties."[1] Id. As the Defendants have

---

[1]The cases cited by the Defendants in support of their position that the Corum Plaintiffs are necessary parties are unavailing, as they are grounded in contract rather than tort.  See Keweenaw Bay Indian Community v. State, 11 F.3d 1341, 1344 (6th Cir. 1993) (dispute over fishing rights pursuant to tribal treaty); Atlanta Int'l Ins. Co. v. Conwood Co., No. CIV. 94-2679-H/A, 1995 WL 861621, at *2 (W.D. Tenn. Mar. 30, 1995) (plaintiff sought allocation of costs

failed to show, as they must, that the Corum Plaintiffs are necessary parties to this lawsuit, their motion to dismiss is DENIED. <u>See</u> <u>Temple</u>, 498 U.S. at 8, 111 S.Ct. at 316 ("no inquiry under Rule 19(b) is necessary, because the threshold requirements of Rule 19(a) have not been satisfied"); <u>PTG Logistics, LLC v. Bickel's Snack Foods, Inc.</u>, 196 F.Supp.2d 593, 606 (S.D. Ohio 2002) (because the party at issue was not a "necessary party," the court need not consider whether it was an indispensable party).

For the reasons set forth herein, the motion of the Defendants to dismiss this matter is DENIED in its entirety.

IT IS SO ORDERED this _7th_ day of September, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

among insurance carriers based on liability policies). Neither addresses joinder of parties under Rule 19 in cases involving potentially joint tortfeasors, or distinguishes the cases cited by the Court or their progeny.

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 36 in case 2:04-CV-02400 was distributed by fax, mail, or direct printing on September 8, 2005 to the parties listed.

---

Taylor Cates
BURCH PORTER & JOHNSON
130 N. Court Avenue
Memphis, TN 38103

DeWitt M. Shy
BURCH PORTER & JOHNSON
130 N. Court Avenue
Memphis, TN 38103

Lanier Fogg
LAW OFFICE OF R. LANIER FOGG
294 Washington Ave.
Memphis, TN 38103--191

Honorable J. Breen
US DISTRICT COURT